COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judge Kelsey and Senior Judge Bumgardner
Argued at Richmond, Virginia


JORDYN SPICER, INFANT BY AND THROUGH
  GARY AND ANGELA SPICER, PARENTS
                                                          OPINION BY
v.        Record No. 2484-05-4                    JUDGE D. ARTHUR KELSEY
                                                          AUGUST 22, 2006
VIRGINIA BIRTH-RELATED NEUROLOGICAL
  INJURY COMPENSATION PROGRAM


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Ann LaCroix Jones (Donna Miller Rostant; Jones & Rostant, P.C.,
                on brief), for appellant.

                Thomas E. Kegley, Assistant Attorney General (Robert F.
                McDonnell, Attorney General; Francis S. Ferguson, Deputy
                Attorney General, on brief), for appellee.


        The parents of Jordyn Spicer appeal a decision of the Workers' Compensation

Commission denying, as noncompensable as a matter of law, their supplemental petition for

attorney fees under the Virginia Birth-Related Neurological Injury Compensation Act, Code

§ 38.2-5009(A)(3).  They also object to the commission's denial of their request for an award of

postjudgment interest on a prior award of fees in the same case.  Agreeing with both assertions,

we reverse and remand for further proceedings consistent with this opinion.

                                            I.

        On behalf of their daughter Jordyn, Gary and Angela Spicer filed a petition with the

commission seeking benefits under the Birth-Related Neurological Injury Compensation Act.  In

considerable detail, the petition described Jordyn's medical condition, provided expert

statements asserting Jordyn sustained an injury covered by the Act, and attached voluminous

medical records in support of the claim.  The Spicers also served interrogatories and requests for

production seeking to determine whether and on what basis the Birth-Related Neurological Injury Compensation Program ("the Program") denied liability.

In response, the Program denied every allegation, claiming a lack of sufficient information to address the merits of the petition. The Program refused to respond to the Spicers' discovery requests, providing instead a verbatim series of boilerplate objections. At the Spicers' request, the deputy commissioner overruled the Program's objections and ordered responses. The Program moved to reconsider, which the deputy commissioner summarily denied.

Shortly thereafter, the Program produced a report from its own expert witness concluding that Jordyn's injury fell within the statutory definition of a birth-related neurological injury. A week later, the medical advisory panel filed its report under Code § 38.2-5008(C) likewise finding Jordyn qualified for benefits under the Birth-Related Neurological Injury Compensation Act. The Program then conceded liability.

Based on that concession, a deputy commissioner ordered the Program in March 2004 to provide all required statutory benefits. A day after this order, the Spicers filed a petition requesting $37,806 in attorney fees[1] and $5,174 in expenses. Though the Program ultimately conceded liability, the Spicers argued, they had to incur a considerable amount of legal and expert expenses to obtain this concession. In reply, the Program agreed the Spicers should recover such expenses, but asserted the total recovery should be no more than $18,013.

The Spicers served discovery requests seeking to establish the reasonableness of their fee petition by comparing it to other cases and to analogous costs incurred by the Program when retaining outside counsel. Both sides filed briefs addressing in detail various aspects of the

---

[1] The petition requested $34,975 in attorney fees and $2,831 for the services of a registered nurse reviewing the medical records. For clarity's sake, however, we refer to these professional fees collectively as "attorney fees."

petition. The deputy commissioner held the Spicers should be awarded fees and expenses, in June 2004, and issued an award of $34,124 for both. On review, the full commission affirmed. The Program paid the award in January 2005.

In February 2005, the Spicers filed a supplemental petition seeking $18,269 for fees and expenses incurred during the litigation over their original petition for fees and expenses. The parties again submitted additional briefing on this issue. The deputy commissioner denied outright the supplemental petition, finding that counsel spent an "excessive amount of time collecting information about attorney's fees and that the Program should not be responsible for compensating this attorney for her research efforts in regard to attorney's fees." Analogizing the situation to another case in which a "simple proceeding had been 'over-lawyered, over-tried, and over-prepared,'" Davison v. FastComm Commc'ns Corp., 42 Va. Cir. 76, 77 (Loudoun 1997), the deputy commissioner found the supplemental petition unreasonable and thus noncompensable under Code § 38.2-5009(A)(3).

At the same time, the Spicers requested an award of postjudgment interest for the period between the June 2004 award of fees by the deputy commissioner and the Program's ultimate payment, after the full commission's review and affirmance, in January 2005. The deputy commissioner denied this request as a matter of law, holding that the Birth-Related Neurological Injury Compensation Act did not authorize an award of postjudgment interest.

On review, the full commission affirmed the deputy commissioner's denial of the supplemental petition. Rather than examining the reasonableness of the fees requested, however, the commission held that as a matter of law the Birth-Related Neurological Injury Compensation Act "does not provide for attorney's fee shifting in the context of fee requests for time spent on previous attorney's fee disputes." Adopting the deputy's reasoning, the commission held the Act disallowed postjudgment interest as well.

II.

On appeal, the Spicers argue that the commission mistakenly construed the Birth-Related Neurological Injury Compensation Act to preclude an award of (a) attorney fees incurred during litigation over the reasonableness of a fee request, and (b) postjudgment interest on a fee award. Both assertions implicate issues of statutory construction, pure questions of law which we review *de novo*. See Meador v. Va. Birth-Related Neurological Injury Comp. Program, 44 Va. App. 149, 152, 604 S.E.2d 88, 90 (2004).

A. ATTORNEY FEES INCURRED DURING FEE DISPUTES

Upon determining that the Birth-Related Neurological Injury Compensation Act applies to an infant's claim, the commission "shall make an award providing compensation" for certain "items relative to such injury . . . ." Code § 38.2-5009(A). Item 3 of § 38.2-5009(A) authorizes an award of "[r]easonable expenses incurred in connection with the filing of a claim under this chapter, including reasonable attorneys' fees, which shall be subject to the approval and award of the Commission."

The Program concedes that this provision authorizes attorney fees incurred in litigating an infant's eligibility to participate in the statutory scheme and in later seeking specific benefits compensable under the Act. But it goes no further, the Program reasons, because attorney fees incurred during litigation over a disputed fee request cannot by definition be "incurred in connection with" a claim within the meaning of Code § 38.2-5009(A)(3). From this perspective, a fee petition is not itself a claim or even part of a claim — so, *a fortiori*, a petition for fees incurred in litigating a fee petition cannot be "in connection with" a claim. Id.

The problem with the Program's reasoning is its first premise. The Act does not define "claim" as such, but several statutory provisions reveal what is meant by the word. A "claimant" is someone who files a claim under Code § 38.2-5004 for "compensation" under the Act. Code

- 4 -

§ 38.2-5001. Under Code § 38.2-5004(A)(1)(h), all "claims" must provide information necessary for the commission to determine the "amount of compensation to be paid to, or on behalf of, the injured infant" on account of the covered injury. Code § 38.2-5008(A)(4) then directs the commission to determine the amount of any "compensation" awardable under Code § 38.2-5009. And Code § 38.2-5009 specifically mentions attorney fees as an allowable item of "compensation." See Code § 38.2-5009(A) & (A)(3). Cf. Roman v. Ondeo Degremont, Inc., 47 Va. App. 773, 781, 627 S.E.2d 539, 543-44 (2006) (holding that, under the Workers' Compensation Act, where attorney fees are "to be paid out of a claimant's accrued compensation, the fee remains compensation within the meaning of the penalty statute").

Thus, the original fee petition filed by the Spicers was every bit as much a compensable aspect of their "claim" under the Act as their request for the payment of medical bills. It necessarily follows that their supplemental petition included fees "incurred in connection with" a claim under Code § 38.2-5009(A)(3). We fail to see how this conclusion somehow falls short, as the Program insists, of giving the statute its natural and intended meaning. In analogous circumstances, scores of courts have "consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent litigating the issue of a reasonable fee." Hollen v. Hathaway Elec., Inc., 584 S.E.2d 523, 528 (W. Va. 2003).[2]

---

[2] See, e.g., Comm'r, INS v. Jean, 496 U.S. 154, 161-62 (1990); Hernandez v. Kalinowski, 146 F.3d 196, 200-01 (3d Cir. 1998); Daly v. Hill, 790 F.2d 1071, 1080 (4th Cir. 1986); Jones v. MacMillan Bloedel Containers, Inc., 685 F.2d 236, 239 (8th Cir. 1982); Spray-Rite Serv. Corp. v. Monsanto Co., 684 F.2d 1226, 1250 (7th Cir. 1982); EDF v. EPA, 672 F.2d 42, 62 (D.C. Cir. 1982); Hymes v. Harnett County Bd. of Educ., 664 F.2d 410, 413-14 (4th Cir. 1981); Young v. Kenley, 641 F.2d 192, 195 (4th Cir. 1981); Bond v. Stanton, 630 F.2d 1231, 1235 (7th Cir. 1980); Weisenberger v. Huecker, 593 F.2d 49, 53-54 (6th Cir. 1979); Lund v. Affleck, 587 F.2d 75, 77 (1st Cir. 1978); Prandini v. Nat'l Tea Co., 585 F.2d 47, 54 (3d Cir. 1978); Hairston v. R & R Apartments, 510 F.2d 1090, 1093 (7th Cir. 1975); Chmill v. Friendly Ford-Mercury of Janesville, Inc., 453 N.W.2d 197, 200 (Wis. Ct. App. 1990).

Nothing in the text of Code § 38.2-5009(A)(3) reveals a legislative intent to depart from this conventional understanding of statutory fee awards.[3]

That does not necessarily mean, however, the Spicers should have been awarded all or even part of the fees sought in the supplemental petition. The deputy commissioner disallowed the entire supplemental petition as unreasonably "excessive" under the circumstances of this case.[4] The Spicers' original fee petition sought $42,980 in fees and expenses. The Program conceded $18,013, making the amount in controversy only $24,967. The litigation over this disputed amount yielded the Spicers only $16,111, yet produced a supplemental petition seeking fees on fees in the amount of $18,269. Thus, for every dollar awarded in *disputed* fees incurred while litigating the merits of the case, the Spicers spent more than a dollar in fees on fees.

The proportionality of the supplemental fee request gets no better when we look only at billable hours. Claimants' counsel logged 139 hours litigating the merits and 68 hours defending the fee petition. So, for every hour of work on the merits, counsel spent about a half hour seeking fees for that hour. "This is the tail wagging the dog, with a vengeance." Ustrak v. Fairman, 851 F.2d 983, 987-88 (7th Cir. 1988) (complaining about a 4 to 1 merits/fees ratio). Such an inefficiency has a direct bearing on the reasonableness of the supplemental petition.[5]

---

[3] Nor does anything in the commission's precedents. See, e.g., In re West, VWC File No. B-99-13 (Feb. 4, 2003) (stating that a claimant under the Birth-Related Neurological Injury Compensation Act "is entitled to reasonable fees associated with pursuing the fee petition").

[4] The Spicers claim the deputy commissioner violated their procedural due process rights by making an on-the-record determination without a hearing. For the reasons stated by the commission in its final opinion, we find this argument meritless and decline to address it further.

[5] See, e.g., Spegon v. Catholic Bishop, 175 F.3d 544, 554 (7th Cir. 1999) (requiring that the "hours claimed to have been expended on the fees request bear a rational relation to the number of hours spent litigating the merits of the case"); EEOC v. Serv. News Co., 898 F.2d 958, 966 (4th Cir. 1990) (finding expenditure of over 20% of time on preparation of fee petition unreasonable); Daly, 790 F.2d at 1080 (holding that the district court did not abuse its discretion by reducing fees-on-fees as unreasonable).

It is for exactly this reason we do not share the Program's fear that, logically applied, our holding would produce an endless cycle of requests for fees-on-fees-on-fees *ad infinitum*. The statute authorizes only *reasonable* fees. When the issue in dispute is reasonableness of fees, all the more litigation over that issue must itself be reasonable — a difficult conclusion to reach when the cost of the contest exceeds the amount contested or, for that matter, when the fees-on-fees bear a disproportionate ratio to the work on the merits of the case. Because successive attorney fee requests incrementally exacerbate the likelihood that each will be declared unreasonable on its face, the statute has a built-in deterrent against *seriatim* fee requests.[6]

In this case, however, the parties agree that the full commission never ruled on the reasonableness of the supplemental petition. Nor will we now. Instead, we remand this case to the commission to determine whether the supplemental petition, in whole or in part, constitutes a reasonable request under the specific circumstances of this case. We commit this decision to the "sound discretion of the commission." Mister Kleen Maint. Co. v. Clark, 17 Va. App. 474, 477, 438 S.E.2d 304, 306 (1993), aff'd, 18 Va. App. 812, 447 S.E.2d 541 (1994) (*en banc*). To be sure, if ever there was a case

> for reviewing the determinations of a trial court under a highly deferential version of the "abuse of discretion" standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court. Not only is the trial court in a much better position than the appellate court to make this determination, but neither the stakes nor the interest in uniform determination are so great as to justify microscopic appellate scrutiny.

Ustrak, 851 F.2d at 987 (Posner, J.).

---

[6] The Program also suggests *res judicata* defeats the supplemental petition as a matter of law. We disagree. Because the supplemental petition sought a compensable item of expenses allowed under Code § 38.2-5009(A), had not been previously requested, and, indeed, had not even accrued at the time the Spicers filed their original petition, *res judicata* does not apply. See generally Davis v. Marshall Homes, 265 Va. 159, 576 S.E.2d 504 (2003).

## B. POSTJUDGMENT INTEREST ON ORIGINAL FEE AWARD

The Spicers also argue that the commission erroneously deprived them of postjudgment interest on their original fee petition award entered in June 2004 and paid in January 2005 after the full commission completed its review. Because the Birth-Related Neurological Injury Compensation Act does not expressly provide for postjudgment interest on awards, the commission concluded the legislature necessarily intended that postjudgment interest could never be awarded as a matter of law. We again disagree.

Code § 38.2-5003 directs the commission to "exercise the power and authority granted to it in Chapter 2 of Title 65.2 as necessary to carry out the purposes of this chapter." Code § 65.2-201(A) authorizes the commission to administer Title 65.2 and to "adjudicate issues and controversies relating thereto." One such issue and controversy is interest on an appealed award governed by Code § 65.2-707, which provides that an award

> entered by the Commission shall take effect on the date of entry.
> To the extent that any payment due under an award is delayed
> beyond its due date by reason of an appeal to the full Commission
> or an appellate court, payments so delayed shall bear interest at the
> judgment rate as provided in § 6.1-330.54.

This statute tracks the traditional Virginia view treating postjudgment interest as a "mandatory" award, Dairyland Ins. Co. v. Douthat, 248 Va. 627, 631, 449 S.E.2d 799, 801 (1994), "for delay in the payment of money actually due." Pulliam v. Coastal Emergency Servs., Inc., 257 Va. 1, 25, 509 S.E.2d 307, 321 (1999) (citation omitted).

Given the remedial purposes of the Birth-Related Neurological Injury Compensation Act, we hold the powers incorporated by reference in Code § 38.2-5003 include awards of postjudgment interest. The postjudgment interest procedure generally applicable to commission awards, therefore, governs awards under the Birth-Related Neurological Injury Compensation

Act.  On remand, the commission should compute the appropriate amount of postjudgment interest and enter an award accordingly.

III.

Holding that the commission has the discretionary authority to award the disputed attorney fees, as well as the mandatory authority to award postjudgment interest, we reverse the commission's ruling and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>