Present: All the Justices

MANASSAS AUTOCARS, INC.,
T/A MANASSAS CHRYSLER

v. Record No. 061458    OPINION BY JUSTICE ELIZABETH B. LACY
                                        June 8, 2007
DANIEL T. COUCH, ET AL.

         FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                    Rossie D. Alston, Jr., Judge

     In this appeal we consider whether the trial court erred

in interpreting a regulation promulgated pursuant to Code

§ 46.2-1581(12)(a), and in submitting to the jury claims under

the Virginia Consumer Protection Act, Code § 59.1-196 et seq.

(the VCPA) and the revocation of acceptance statute, Code

§ 8.2-608.

     Manassas Autocars, Inc., t/a Manassas Chrysler (Manassas)

is an automobile dealer licensed by the Virginia Motor Vehicle

Board.  In February 2004, Daniel T. and Crystal L. Couch (the

Couches) went to Manassas' showroom in response to a newspaper

advertisement for a Chrysler Town & Country Touring minivan.

The advertisement contained a picture of the minivan and

listed a stock number, the principal equipment of the vehicle,

and the sales price.  Upon arriving at the dealership, the

Couches were told that the minivan in the advertisement was

not available because it had already been sold.  The Manassas

salesperson offered the Couches a Town & Country LX model

minivan for a price slightly higher than the Touring model

featured in the advertisement.  The Couches ultimately agreed to purchase a new red LX model minivan.  Manassas did not have a red LX model in stock but arranged to have one delivered from another dealership that day.

The Couches returned to the dealership a few hours later to pick up the LX model.  While waiting for the vehicle to be cleaned, they filled out the purchase and financing agreements and made a $2,000 down payment.  When the Couches saw the minivan, they noticed a grey circular "splotch" approximately seven to eight inches in diameter with a "drip" mark streaking three to four inches down to the wheel well of the passenger side rear panel.  The Manassas salesperson told the Couches to make an appointment to bring the vehicle back and Manassas' detailer would remove the stain.  The Couches made the appointment and drove the vehicle home.

Over the next few weeks, Manassas tried unsuccessfully to remove the stain.  Ultimately Manassas repainted the area affected by the stain without telling the Couches or getting their permission to do so.  The Couches subsequently attempted to return the vehicle to Manassas, stating that they had purchased a new vehicle, not a repainted vehicle.  Manassas refused to accept the repainted vehicle on the ground that title to the vehicle had passed.

The Couches subsequently notified Manassas by letter that they were revoking acceptance of the vehicle, and returned the vehicle to Manassas, but Manassas had it towed back to the Couches' residence.[1] At that point, the vehicle had been driven approximately 1,100 miles.

The Couches filed an amended motion for judgment against Manassas claiming that they properly revoked acceptance of the vehicle under Code § 8.2-608, and had suffered monetary damages as a result of the revocation. They also claimed that the use of the stock number in the advertisement of the Town & Country Touring vehicle, without any indication of limited availability, was a deceptive practice under Code § 46.2-1581(12)(a) and, because the advertisement related to a consumer transaction, it violated Code § 59.1-200(A)(8) of the VCPA.[2]

Manassas responded to the Couches' VCPA claim by citing a regulation adopted by the Motor Vehicle Board, 24 VAC § 22-30-30(L), ("the regulation") which, according to Manassas, permits an advertisement for new vehicles to list such vehicles by stock number as "one means of satisfactorily

_____

[1] The Couches also notified Suntrust Bank (Suntrust), the lender for the purchase, of the revocation. Suntrust eventually repossessed the vehicle.

[2] The amended motion for judgment contained additional claims which are not at issue in this appeal, including claims against Suntrust, which was eventually dismissed as a party.

disclosing a limitation of availability." Manassas argued that the advertisement complied with the regulation and, because acts "authorized under laws or regulations of this Commonwealth" are excluded from the VCPA under Code § 59.1-199(A), the Couches could not pursue a claim under the VCPA based on the advertisement.

At trial, Manassas sought to introduce the regulation as evidence that the advertisement containing the stock number was permissible. The trial court refused to admit the regulation, ruling that it was inconsistent with Code § 46.2-1581(12)(a), and that statutes prevail over regulations in the event of a conflict. The jury returned a verdict in favor of the Couches, awarding damages of $3,993 on the revocation claim and $2,375 on the VCPA claim. The VCPA damages were increased to $7,125 because the jury found the violation "willful" under Code § 59.1-204(A). Manassas appeals.

DISCUSSION

I. The VCPA claim

Manassas seeks reversal of the trial court's ruling that the regulation was inconsistent with Code § 46.2-1581(12)(a), and that Manassas therefore could not introduce the regulation or argue that compliance with the regulation was a defense to the Couches' claim of deceptive advertising. Manassas also complains that the trial court erred in allowing the Couches

4

to maintain an action under the VCPA based on a violation of Code § 46.2-1581(12)(a).

As a preliminary matter, we agree with Manassas' statements that regulations of state agencies such as the Motor Vehicle Board have the force of law, Sargent Electric Co. v. Woodall, 228 Va. 419, 424, 323 S.E.2d 102, 105 (1984), and that an agency's interpretation of its governing statutes, as reflected in its regulations, is entitled to great weight. Commonwealth v. American Radiator & Standard Sanitary, 202 Va. 13, 19, 116 S.E.2d 44, 48 (1960). Regulations, however, may not conflict with the authorizing statute. Judicial Inquiry & Review Comm'n v. Elliott, 272 Va. 97, 115, 630 S.E.2d 485, 494 (2006). Whether a regulation is inconsistent with its enabling legislation is properly a subject of judicial review. See, e.g., General Motors Corp. v. Dep't of Taxation, 268 Va. 289, 292-95, 602 S.E.2d 123, 125-26 (2004)(holding regulation promulgated by Department of Taxation was inconsistent with statute); Virginia Department of Taxation v. Blanks Oil Co., 255 Va. 242, 246-47, 498 S.E.2d 914, 916 (1998)(holding regulation promulgated by Department of Taxation was not inconsistent with statute); WTAR Radio-TV Corp. v. Commonwealth, 217 Va. 877, 879-80, 234 S.E.2d 245, 246-47 (1977)(holding regulation promulgated by the

Commissioner of the Revenue was not "unwarranted extension" of statute).

Code § 46.2-1581(12)(a) prohibits a motor vehicle dealer from advertising for sale a vehicle which the dealer has no intention to sell at the price or terms advertised. That section states:

> If a specific vehicle is advertised, the seller shall be in possession of a reasonable supply of said vehicles, and they shall be available at the advertised price. If the advertised vehicle is available only in limited numbers or only by order, that shall be stated in the advertisement. For purposes of this subdivision, the listing of a vehicle by stock number or vehicle identification number in the advertisement for a used vehicle is one means of satisfactorily disclosing a limitation of availability. Stock numbers or vehicle identification numbers shall not be used in advertising a new vehicle unless the advertisement clearly and conspicuously discloses that it relates to only one vehicle.

Code § 46.2-1581(12)(a). The regulation promulgated by the Motor Vehicle Board pursuant to this statute states in relevant part:

> If the advertised vehicle is available only in limited numbers or only by order, that shall be stated in the advertisement. The listing of vehicles by stock numbers or vehicle identification numbers is permissible and is one means of satisfactorily disclosing a limitation of availability, provided a separate number is used for each vehicle.

24 VAC § 22-30-30(L). Manassas argues that Code § 46.2-1581(12)(a) specifically allows the use of stock numbers in

6

advertising new vehicles "as long as the advertisement clearly and conspicuously discloses that the stock number used in the ad relates to only one vehicle." The regulation, according to Manassas, is consistent with the statute because the regulation states that, if a separate stock number is used for each car in the advertisement, the stock number satisfactorily discloses limitation of availability.

Manassas' interpretation ignores the prohibition in Code § 46.2-1581(12)(a) against using a stock number in the advertisement of new cars to indicate limited availability "unless the advertisement clearly and conspicuously discloses that it relates to only one vehicle." The plain meaning of this section is that, for new car advertisements, the stock number alone is insufficient to show limited availability and that something in the advertisement, in addition to the stock number, must clearly and conspicuously indicate that only one vehicle is available. The regulation, however, specifically allows the use of the stock number alone in an advertisement for a new car to serve as an indication of limited availability. Therefore, the regulation and the statute are in conflict and the trial court correctly concluded that the statute prevailed. See General Motors, 268 Va. at 293, 602 S.E.2d at 125 ("It is equally well established, however, that if the language of a statute is clear and unambiguous, a

7

regulatory interpretation . . . that is in conflict with the plain language of the statute cannot be sustained."). Accordingly, the trial court did not err in refusing to allow Manassas to introduce the regulation or argue as a defense that the advertisement at issue complied with the regulation.[3]

Manassas also asserts the trial court erred in allowing the Couches to "maintain a VCPA claim based on their allegations that a violation of Code § 46.2-1581.12(a) was a fraudulent act or practice under the VCPA." While this assignment of error appears straightforward, Manassas' arguments at trial, and on brief and in oral argument in this Court encompass different legal issues. At oral argument Manassas addressed this assignment of error by arguing that the trial court did not have "subject matter jurisdiction" to consider a violation of Code § 46.2-1581 under the VCPA. Manassas based this position on the fact that Code § 46.2-1581 is not included among the sections of Title 46.2 which are set forth in Code § 59.1-200 as possible violations of the VCPA. In other words, according to Manassas, the failure to include Code § 46.2-1581 in Code § 59.1-200 vested enforcement of that

_____

[3] On brief and at oral argument before this Court, Manassas argued that the introduction of the regulation should have been allowed to rebut the Couches' allegation that the advertisement was a willful violation of the VCPA. However, Manassas never raised that argument as a grounds for admission

8

section solely in the Motor Vehicle Board.  Manassas did not make this argument in the trial court, however, and we therefore do not consider it.  Rule 5:25.

Manassas did argue on brief and at the trial court, however, that the Couches had no claim under the VCPA because of the provision in Code § 59.1-199(A) that the VCPA does not apply to "[a]ny aspect of a consumer transaction which aspect is authorized under laws or regulations of this Commonwealth. . . ."  Manassas construes this language to mean that any aspect of a consumer transaction that is regulated by Title 46.2, or by regulations adopted pursuant to that Title, becomes an "authorized" aspect of the transaction and is therefore exempt from the VCPA.  Applying this logic to the case before us, Manassas argues that the advertisement at issue was exempt from a claim under the VCPA because it was "an aspect of the consumer transaction" between Manassas and the Couches, and dealer advertising is regulated and therefore "authorized" by Code § 46.2-1581 and the regulation.

Manassas' construction of Code § 59.1-199(A) equates the word "authorized" with "regulated."  This interpretation, if correct, would provide an exemption from the VCPA to all motor vehicle dealer advertising regardless of content, since such

_____

of the regulation before the trial court and we therefore do not consider it here.  Rule 5:25.

advertising is regulated pursuant to Title 46.2. Section 59.1-199(A), however, exempts only those aspects of a consumer transaction that are "authorized." Authorized actions are those sanctioned by statute or regulation. Manassas was not entitled to exemption from a VCPA claim on the sole ground that motor vehicle dealer advertising is regulated by other statutory provisions and regulations. Accordingly, we find no error in the trial court's ruling that the Couches could pursue a claim under the VCPA in this case.

## II. Revocation of Acceptance

Code § 8.2-608 allows a buyer to revoke acceptance of goods if the goods contain a non-conformity that "substantially impairs its value to him" and if the buyer accepted the goods on the assumption that the nonconformity would be cured. Code § 8.2-608. The revocation must occur within a reasonable time after the nonconformity was discovered by the buyer and before there is any substantial change in the condition of the goods purchased. The buyer may recover damages incurred as a result of the revocation. Id.

Manassas claims that the trial court erred in denying its motions to strike the Couches' revocation claim because the evidence did not establish that the nonconformity substantially impaired the vehicle's value to the Couches. Specifically, Manassas argues that under Gasque v. Mooers

10

Motor Car Co., 227 Va. 154, 313 S.E.2d 384 (1984), the measure of substantial impairment of value to the buyer is not diminution in the value of the goods on the open market; rather, unless the evidence establishes otherwise, the usual and customary purpose of the goods — in this case, transportation — is presumed to be the reason for the purchase and the measure by which the value of the goods is determined. Considering this purpose, Manassas points out that there was no evidence that the nonconformity adversely affected the vehicle's "drivability." The only evidence offered at trial regarding value was the Couches' expert witness who testified that the repainting diminished the value of the vehicle by 20 percent. Manassas contends that the Couches therefore failed to carry their burden of proof on their revocation claim and the trial court erred in submitting this issue to the jury. We disagree with Manassas' proposed application of Gasque.

The plaintiffs in Gasque sought to revoke their acceptance of a new 1979 Fiat vehicle based on a number of problems such as a water leak, heater malfunction, inoperative clock and interior light, automatic choke problems, excessive oil consumption, loud vibrations, and other noises and rattles. The plaintiffs had driven the vehicle with these various defects for at least 4,500 miles prior to revocation, and the vehicle had been driven over 8,000 miles at the time

11

of trial.  The trial court struck the plaintiffs' evidence and entered judgment for the defendant dealer, holding that, under a "driveability" test, there was no substantial diminution in the value of the vehicle to the plaintiffs and the plaintiffs did not notify the dealer of the revocation within a reasonable time.

On appeal to this Court, one issue was whether the "driveability" test used by the trial court was correct.  The plaintiffs argued that the appropriate test was a subjective test, "under which the buyers need only persuade the fact-finder that their 'faith has been shaken' in the product." 227 Va. at 160, 313 S.E.2d at 389.  We rejected this argument, holding that while a "driveability" test "would not be of universal application," the application of the test in that case was not erroneous "where the buyers failed to prove any need for the car beyond ordinary transportation."  Id. at 161, 313 S.E.2d at 389.

The record in this case shows that Mr. Couch testified he wanted to purchase a new vehicle, not a repainted vehicle, and that the repainted vehicle was not the vehicle they purchased. Mrs. Couch testified that, if she had been told that Manassas intended to cure the defect in the vehicle by repainting it, she would not have given permission because she "purchased a vehicle at new car standards and if you paint it, then, it is

12

no longer a new car."  The Couches' expert witness then testified that the vehicle lost 20 percent of its value in its repainted condition.

This record thus demonstrates that the Couches intended to buy not only a means of transportation but a new vehicle. When the nonconforming condition was repaired by repainting, the value of the vehicle to the Couches — as a new vehicle — was impaired.  The expert's testimony that the repainting caused a 20 percent decrease in value supports a determination that the impairment was substantial.  Therefore the trial court did not err in submitting the Couches' revocation of acceptance claim to the jury.

For the reasons stated above, we will affirm the judgment of the trial court.

Affirmed.