COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Frank and Kelsey
Argued at Richmond, Virginia

JOHN P. KAVANAUGH, JR., AN INFANT,
 BY AND THROUGH HIS PARENTS AND NEXT FRIENDS,
 JULIE D. KAVANAUGH AND JOHN P. KAVANAUGH, SR.
                                                               OPINION BY
v.        Record No. 2461-11-4                      JUDGE D. ARTHUR KELSEY
                                                               JULY 24, 2012

VIRGINIA BIRTH-RELATED NEUROLOGICAL
 INJURY COMPENSATION PROGRAM

            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Ann LaCroix Jones (Donna Miller Rostant; Jones & Rostant, PC,
            on briefs), for appellant.

            Wesley G. Russell, Jr., Deputy Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General; Carla R. Collins, Assistant
            Attorney General; Farnaz Farkish, Assistant Attorney General,
            on brief), for appellee.


        In this case, the Virginia Workers' Compensation Commission enforced a reimbursement

guideline issued by the Virginia Birth-Related Neurological Injury Compensation Program and

denied a request by the claimants for reimbursement of covered expenses.  We reverse, finding

the Program's guideline cannot be justified under the Virginia Birth-Related Neurological Injury

Compensation Act, Code § 38.2-5000 *et seq*.

                                                    I.

        John and Julie Kavanaugh, parents of John Kavanaugh, Jr., filed a petition with the

commission pursuant to Code § 38.2-5004.  The petition claimed their son was born with a

birth-related neurological injury, resulting in medical expenses covered by the Act.  The petition

alleged facts qualifying their son for benefits but did not itemize any medical expenses subject to

reimbursement.  "Medical bills and insurance claims payment documentation," the petition

stated, "have been withheld pending determination of John Kavanaugh's qualification for compensation under the Act." Petition for Benefits ¶ 18, at 5 (App. at 5).[1]

The Virginia Birth-Related Neurological Injury Compensation Program filed a reply conceding the child's injury qualified for benefits under the Act. On November 7, 2007, a deputy commissioner issued a consent order stating: "It is hereby ORDERED that the Virginia Birth-Related Neurological Injury Compensation Program shall be and is hereby directed to pay all amounts and expenses provided by Virginia Code Ann. § 38.2-5009 for the benefit of the infant, John Kavanaugh." App. at 7 (entered Nov. 7, 2007).

In 2010, the Kavanaughs forwarded to the Program a request for reimbursement of $16,071.99 in medical expenses arising out of treatment received between 2004 to 2010. The Program reimbursed only $3,481.99 in expenses and denied the remaining $12,590.00 of the request because it failed to comply with a guideline issued by the Program requiring requests for reimbursement within certain fixed deadlines: two years from the date of admission (for pre-admission expenses) and one year from incurring the expense (for post-admission expenses). Id. at 14 (citing Program Guidelines at 21-22 (approved Oct. 14, 2008)).

The Kavanaughs objected to the denial, claiming the expenses were covered under the Act and nothing in the statute authorized the Program to impose fixed limitation periods for reimbursement requests. The Kavanaughs filed a supplemental petition with the Workers' Compensation Commission seeking full reimbursement of their covered expenses. The parties stipulated that the "treatments at issue were rendered, that the expenses at issue were incurred,

---

[1] Code § 38.2-5004(A)(1)(i) requires a petition to provide "[d]ocumentation of expenses and services incurred to date, which indicates whether such expenses and services have been paid for, and if so, by whom." Though the Kavanaughs' petition did not include such documentation, the Program did not contest the petition on this ground and later consented to the entry of an award order.

and that the treatments were medically necessary." Id. at 188. The Commission, however, enforced the reimbursement guideline and denied the supplemental petition. The Kavanaughs now appeal to us, arguing the Commission and the Program erred as a matter of law.

## II.

The Virginia Birth-Related Neurological Injury Compensation Act, Code § 38.2-5000 *et seq.*, "provides claimants with a no-fault remedy for compensation for qualified injuries." Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 271, 590 S.E.2d 631, 635 (2004) (citing Code § 38.2-5009). The Act divides the responsibility for implementing its provisions to three separate entities: The Program, governed by its board of directors, the State Corporation Commission (SCC), and the Workers' Compensation Commission.

## A.

In its role as administrator, the Program has authority to adopt "rules . . . not related to the health care provided for claimants" consistent with the Virginia Public Procurement Act, Code § 2.2-4300 *et seq.*, for contracting for goods and services. See Code § 38.2-5002.1(B); see, e.g., Request for Proposal, 21 Va. Regs. Reg. 43 (Sept. 20, 2004). Outside this context, however, the Act does not directly authorize the Program to promulgate general administrative rules and regulations. Even so, the Act arguably implies such authority by providing that the "procedure for adoption of rules and regulations by the board of directors of the Program shall be consistent with the provisions of Article 2 (§ 2.2-4006 *et seq.*) of the Administrative Process Act." Code § 38.2-5002.1(D).

The Act also gives the State Corporation Commission an oversight role. In a comprehensive review of the Program, the Judicial Legislative Audit and Review Commission (JLARC) listed the "three primary duties" of the SCC with regard to the birth injury program:

"(1) to review and approve the program's plan of operation, (2) to provide a review of the actuarial soundness of the fund, and (3) if the fund is determined to be actuarially unsound, to impose assessments on liability insurers and physicians who do not participate in the program." Review of the Virginia Birth-Related Neurological Injury Compensation Program 8 (Jan. 2003).[2] Pursuant to the Act, the Program has authority to seek amendments to its initial "plan of operation" which provides, among other things, for efficient administration and for "prompt processing of claims" following awards by the Commission. Code § 38.2-5017(B). The proposed amendments, however, have no efficacy of their own. They must be reviewed and approved by the SCC. See Code § 38.2-5017(D); 14 Va. Admin. Code § 5.

The Act grants the adjudicatory function entirely to the Workers' Compensation Commission by authorizing it to "hear and pass upon all claims" for compensation. Code § 38.2-5003. The Act requires claimants to file a petition that includes considerable information, including "[d]ocumentation of expenses and services incurred to date, which indicates whether such expenses and services have been paid for, and if so, by whom." Code § 38.2-5004(A)(1)(i). Thereafter, Code § 38.2-5008(A)(4) "directs the commission to determine the amount of any 'compensation' awardable under Code § 38.2-5009." Spicer v. Birth Related Neuro. Injury Comp. Program, 48 Va. App. 613, 618-19, 633 S.E.2d 732, 734 (2006).[3] That is, the *Commission* decides both "Whether" and "How much" compensation is due under the Act. Code § 38.2-5008(1) & (4).

---

[2] Available at http://jlarc.virginia.gov/reports/Rpt284.pdf (last visited July 19, 2012).

[3] Further fragmenting responsibilities, the Act also requires automatic review by several medical agencies and institutions. The "Department of Health Professions shall investigate the petition or claim," Code § 38.2-5004, the "Department of Health shall investigate the petition or claim," id., and each of Virginia's "medical schools shall maintain a review panel of physicians to review claims, with responsibility for reviewing claims rotating among each medical school's panel on a case-by-case basis" and the "Commission shall direct the Program to pay to the medical school that performed the assessment and prepared a report," Code § 38.2-5008.

B.

In 2004, the Program issued a "guideline" that precludes reimbursement of covered expenses "if submitted after one year from the date they are incurred" or, if incurred prior to acceptance, were not "submitted within two years of entry into the Program." Program Guidelines at 17 (approved Apr. 13, 2004).[4] The Kavanaughs assert that the Program acted outside its delegated authority by issuing this guideline and that the Commission erred by enforcing it. These arguments present "pure questions of law which we review *de novo*." Spicer, 48 Va. App. at 618, 633 S.E.2d at 734. Applying this standard of review, we hold the Program exceeded its authority by issuing the reimbursement deadlines.

Code § 38.2-5009 governs the scope of an award. Subsection A(1) authorizes awards of myriad forms of medical and incidental expenses and precludes an award for a host of other specific items, such as expenses reimbursed by governmental programs, prepaid health plans, and the like. In both instances, the statute is emphatic: The Commission "shall" award covered expenses and "shall not" award uncovered expenses. Id. Nothing in Code § 38.2-5009(A)(1) precludes a reimbursement award for covered medical expenses incurred beyond a fixed time period prior to the reimbursement request. The only statutory time limitation in the Act is Code § 38.2-5013, entitled "Limitation on claims," which provides: "Any claim under this chapter that is filed more than ten years after the birth of an infant alleged to have a birth-related neurological injury is barred."

---

[4] The same language appears in the Program's current guidelines. See Program Guidelines 21-22 (approved Oct. 14, 2008), available at http://www.vabirthinjury.com/News_Publications.htm (last visited July 19, 2012). Before approving them, the Program published notice "that the Virginia Birth-Related Neurological Injury Compensation Program seeks comment on proposed changes to the program guidelines." 24 Va. Regs. Reg. 3425 (Aug. 4, 2008); 24 Va. Regs. Reg. 3081 (July 7, 2008); 20 Va. Regs. Reg. 926 (Jan. 12, 2004).

The Program contends it may supplement the Act by issuing guidelines[5] pursuant to Code § 38.2-5002.1(D) — which states the "procedure for adoption of rules and regulations by the board of directors of the Program shall be consistent with the provisions of Article 2 (§ 2.2-4006 *et seq.*) of the Administrative Process Act." This provision, the Program asserts, gives it plenary authority to issue administrative rules and regulations to complement the Act's provisions. The Kavanaughs disagree, arguing the delegation of power to issue administrative rules and regulations under subsection D of Code § 38.2-5002.1 relate only to the Program's procurement authority granted by subsection B.

We need not resolve in this case the debate over the ultimate scope of the Program's power to issue administrative rules and regulations. No matter the scope, the Program could not issue a "guideline" inconsistent — directly or indirectly — with the text and structure of the enabling legislation. Administrative rules and regulations "may not conflict with the authorizing statute," Manassas Autocars v. Couch, 274 Va. 82, 87, 645 S.E.2d 443, 446 (2007), or in any material way be "inconsistent with the authority of the statutes that govern it," Judicial Inquiry & Review Comm'n v. Elliott, 272 Va. 97, 115, 630 S.E.2d 485, 494 (2006). Accord Woods v. Va. Dept. of Motor Vehicles, 26 Va. App. 450, 458-59, 495 S.E.2d 505, 509-10 (1998) (invalidating "guidelines" that are "inconsistent with the statute"). "Whether a regulation is inconsistent with its enabling legislation is properly a subject of judicial review." Manassas Autocars, 274 Va. at 87, 645 S.E.2d at 446. In exercising this review, courts take into account the text as well as the context of the underlying statute, "viewing it as a 'symmetrical and coherent regulatory

---

[5] See generally Woods v. Va. Dept. of Motor Vehicles, 26 Va. App. 450, 457, 495 S.E.2d 505, 509 (1998) (stating "an agency may adopt an 'interpretative rule' without the binding force of law" and may "establish guidelines for its employees to use in applying the statute so as to give effect to the intent and spirit of the legislation" (quoting Jackson v. W., 14 Va. App. 391, 399, 419 S.E.2d 385, 390 (1992))).

scheme.'" Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995)).

The Program's reimbursement deadline purports to limit the emphatic directive of Code § 38.2-5009(A)(1), which states the Commission "shall" award covered expenses and "shall not" award uncovered expenses.[6] Despite the many differences between the two, none involves a fixed time deadline between the date the expense was incurred and the date it was submitted for reimbursement. The conspicuous absence of any fixed reimbursement deadline in the Act, particularly given the comprehensive provisions of Code § 38.2-5009, suggests the Program lacked the authority to unilaterally add one on its own.[7]

Equally important, the Program's reimbursement guideline also unwittingly usurps the Commission's exclusive adjudicatory function under Code §§ 38.2-5003, 38.2-5004(A)(1)(i), and 38.2-5008(A)(4). Cf. United Mine Workers v. Kleppe, 561 F.2d 1258, 1262 (7th Cir. 1977) (upholding a regulation that "conditions petitioner's access to the agency's forum" but "does not even purport, as would a statute of limitations, to bar enforcement of petitioner's right to compensation in any other forum"). Determining whether a particular invoice is so stale as to render it unpersuasive evidence of a covered expense — thereby implicating the requirement that post-admission expenses "be paid as they are incurred," Code § 38.2-5009(A)(1) — involves a

---

[6] We do not concern ourselves with the "competing policy considerations," Cent. Va. Obstetrics, 42 Va. App. at 276, 590 S.E.2d at 638, that might arguably justify the Program's reimbursement guideline. "Our task is considerably more simple. We begin, as always, with the language of the statute. And we strive to give that language a literal construction unless doing so would involve a manifest absurdity. This textualist approach presumes that the legislature chose, with care, the specific words of the statute." Id. at 276, 590 S.E.2d at 638 (citations and internal quotation marks omitted).

[7] As we have said before, we view the Act as "a comprehensive legislative enactment. It includes multiple provisions defining its terms, describing its scope, and qualifying its reach." Cent. Va. Obstetrics, 42 Va. App. at 280, 590 S.E.2d at 639.

case-by-case application of factfinding discretion.  Accord Berglund Chevrolet v. Landrum, 43 Va. App. 742, 755, 601 S.E.2d 693, 699 (2004) (noting "no rigid rule can be laid down as to what delay will constitute laches; every suit must depend upon its own circumstances" (quoting Stewart v. Lady, 251 Va. 106, 114, 465 S.E.2d 782, 786 (1996))).  Only the Commission, not the Program, has the statutory authority to exercise that discretion.[8]

III.

Because the Program lacked authority to issue the reimbursement guideline and the Commission erred in enforcing it, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

---

[8] We acknowledge the Program's authority to amend its initial "plan of operation" for various purposes, including the desire to promote efficient administration and "prompt processing" of reimbursement claims.  See Code § 38.2-5017(B).  But we need not address whether this reimbursement guideline could be included in the Program's plan of operation because proposed amendments to the plan must be reviewed and approved by the SCC.  See Code § 38.2-5017(D); 14 Va. Admin. Code § 5.  Nothing in the record of this case suggests the Program has ever presented the reimbursement guideline to the SCC or that the SCC has reviewed and approved this guideline.