SCHOOL BOARD OF CAMPBELL COUNTY

V.

DARREN SCOTT BEASLEY, ETC.

Record No. 880823

June 9, 1989

Present: All the Justices

A. David Hawkins (Overbey, Overbey, Hawkins & Selz, on brief), for appellant.

E. Ronald Feinman, Jr. for appellee.

Justice Compton delivered the opinion of the Court.

In this controversy arising under state and federal statutes regarding special education programs for handicapped children, the dispositive issue is whether the Court of Appeals applied an incorrect standard of review to the circuit court's decision in the case. We answer that question in the affirmative and reverse.

Through the Education of the Handicapped Act, 20 U.S.C. §§ 1401 to 1485 (1982 & Supp. V 1987) as amended (the Act), Congress provides federal funds to assist state and local agencies in educating handicapped children, and conditions the funding upon compliance by a state with certain goals and procedures. The Act was an effort to promote the education of handicapped children and was passed in response to Congress' perception that a majority of handicapped children in the United States formerly were either excluded from schools or merely sitting in classrooms passing time until they were old enough to "drop out." *Board of Education* v. *Rowley*, 458 U.S. 176, 179 (1982).

In order to qualify for federal funds under the Act, a state must demonstrate that it "has in effect a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). The "free appropriate public education" mandated by the Act is fashioned to the unique needs of the handicapped child by means of an "individualized educational program." 20 U.S.C. § 1401(a)(18).

Responding to the Act, the General Assembly enacted a number of statutes implementing its requirements. Code §§ 22.1-213 to -221. As pertinent to this case, the Virginia statutes provide that the State Board of Education shall prepare and supervise the implementation by each school division of a program of special education "designed to educate and train handicapped children." § 22.1-214(A). "The program developed by the Board of Education shall be designed to ensure that all handicapped children have available to them a free and appropriate education, including special education designed to meet the reasonable educational needs of such children." *Id.*

The term "special education," as defined by the Virginia statutes, means "classroom, home, hospital, institutional or other instruction, including physical education and vocational education, to meet the reasonable educational needs of handicapped children, transportation, and related services required or appropriate to assist handicapped children in taking advantage of, or responding to, educational programs and opportunities commensurate with their abilities." § 22.1-213(2). The statute further provides that the "Board of Education shall determine by regulation standards for determining which instruction and services must be provided pursuant to an individualized education program." *Id.*

The Virginia statutes also provide that if a school division "is unable to provide a free appropriate public education to a handicapped child and it is not appropriately available in a state facility, it shall offer to place the child in a nonsectarian private school for the handicapped approved by the Board of Education or such other licensing agency as may be designated by state law." § 22.1-218(A). The statute also provides that the "school board of such division shall pay to, or on behalf of, the parent or guardian of such child the reasonable tuition cost and other reasonable charges . . . ." *Id.*

The Virginia statutes incorporate certain procedural requirements. Section 22.1-214(B) requires the Board of Education to prescribe "procedures to afford due process to handicapped children and their parents or guardians and to school divisions in resolving disputes as to program placements, individualized education programs, tuition eligibility and other matters as defined in state or federal statutes or regulations." The statute also provides that any party aggrieved by the findings and decision made under the established procedures "may bring a civil action in the circuit court for the jurisdiction in which the school division is located." § 22.1-214(D). Significant to the present dispute, the statute also provides: "In any such action the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." *Id.*

The present proceeding stemmed from the development of an individualized education plan (IEP) for appellee Darren Scott Beasley, a student in the Campbell County Public Schools. Refusing to keep the child in the public schools, his parents removed

him from the county school system in 1983; enrolled him at Oakland School, a private institution located at Boyd Tavern; and filed for a due process hearing in an attempt to have appellant School Board of Campbell County pay for the private residential schooling. At the time, the child was 14 years of age and in the seventh grade. He suffered from a severe learning disability in the area of reading.

In June 1984, a hearing officer appointed pursuant to statute and Board of Education regulations, conducted an administrative due process hearing. He considered testimonial and documentary evidence offered on behalf of the child and the school board, the parties being represented by counsel. In a July 1984 report, the hearing officer concluded that "the program proposed for Darren Beasley for the 1984-1985 school year by Campbell County Public Schools does not offer a free appropriate public education for this severely learning disabled child." The school board appealed this decision to a duly appointed reviewing officer. Upon consideration of the transcript of the testimony at the due process hearing, the exhibits and written briefs of counsel, the reviewing officer, in a January 1985 report, adopted the factual findings of the hearing officer and generally affirmed his decision.

In February 1985, the school board, pursuant to Code § 22.1-214(D), filed the present civil action in the Circuit Court of Campbell County naming the child, acting through his parents, as the respondent. In an amended petition, the school board asserted that it was aggrieved by the administrative decisions. The school board asked the circuit court, "after giving due consideration to the educational decisions made by the local school authorities," to find that the evidence does not preponderate that the child is entitled to reimbursement for the cost of private residential placement, and to find that it had offered the required free and appropriate education to the child.

The circuit court, Honorable J. Samuel Johnston, Jr., Judge, presiding, reviewed the complete file on the matter, including the evidence presented to the hearing officer. No further testimony or other evidence was presented, but counsel made additional argument. In an April 1986 letter opinion, the circuit judge ruled in favor of the school board and determined that "Campbell County has taken every reasonable step to provide Darren with a free appropriate public education and should not be required to fund his residential placement at Oakland."

The circuit court's judgment was appealed to the Court of Appeals, and a panel unanimously reversed the trial court in a May 1988 opinion. *Beasley* v. *School Board*, 6 Va. App. 206, 367 S.E.2d 738 (1988). The school board's motion for a rehearing *en banc* was denied. We awarded the school board this appeal, determining that the decision of the Court of Appeals involves matters of significant precedential value. Code § 17.116.07(B).

■ In *Board of Education* v. *Rowley*, the Supreme Court considered the meaning of the requirement of a "free appropriate public education," noting that Congress sought in the Act to assist the states in discharging their responsibility under the United States Constitution to provide equal protection of the laws. 458 U.S. at 198. Interpreting provisions of the Act similar to those contained in the Virginia statutes, the Supreme Court said that "a 'free appropriate public education' consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Id.* at 188-89. Such instruction and services must "be provided at public expense and under public supervision, meet the State's educational standards, approximate the grade levels used in the State's regular education, and comport with the child's IEP." *Id.* at 189. Therefore, the Supreme Court said, "if personalized instruction is being provided with sufficient supportive services to permit the child to benefit from the instruction, and the other items on the definitional checklist are satisfied, the child is receiving a 'free appropriate public education' as defined by the Act." *Id.*

■ The Supreme Court noted, however, that Congress' primary aim was to make public education "available" to handicapped children. *Id.* at 192. The intent was "more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside." *Id.* By specifying an "appropriate" education, Congress did not mean "a potential-maximizing education." *Id.* at 197 n.21. Equal protection requires nothing more than "equal access." *Id.* at 200.

■ But the education to which access is provided must be sufficient "to confer *some* educational benefit upon the handicapped child." *Id.* (emphasis added). Thus, the Court concluded that "the 'basic floor of opportunity' provided by the Act consists of access to specialized instruction and related services which are individu-

ally designed to provide educational benefit to the handicapped child." *Id.* at 201. *See* Code §§ 22.1-213(2) and -214(A). In other words, a state satisfies the federal requirement to provide a handicapped child with a "free appropriate public education" when it provides "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley*, 458 U.S. at 203. *Accord Martin* v. *School Board*, 3 Va. App. 197, 206, 348 S.E.2d 857, 862 (1986).

■ Against this background, we examine further the procedural aspects of the present case. Looking first to the decisional standard to be applied by the circuit court, we find that the Court of Appeals properly recognized that the trial court was required to make an "independent decision" based on the preponderance of the evidence. *Beasley*, 6 Va. App. at 211, 367 S.E.2d at 741; *Rowley*, 458 U.S. at 205.

■ The Court of Appeals also correctly stated the weight to be accorded by the trial court to the administrative findings under consideration. Review of an administrative decision by officers appointed under authority of the Board of Education concerning a special education program for a handicapped child is not subject to the Administrative Process Act (APA), but to the provisions of § 22.1-214(D). *Beasley*, 6 Va. App. at 212, 367 S.E.2d at 741. As the Court of Appeals pointed out, the statute permits the court to hear additional evidence, to weigh the evidence as a whole, and to base its decision on a preponderance of the evidence. The trial court is not limited to determining, as under the APA, whether there is "substantial evidence in the agency record" to support the administrative findings of fact. *See* Code § 9-6.14:17; *Virginia Real Estate Commission* v. *Bias*, 226 Va. 264, 268-69, 308 S.E.2d 123, 125 (1983).

■ Therefore, the proper standard to be employed by the circuit court is "to determine, based on a preponderance of the evidence, whether the substance of the proposed individualized educational program is reasonably calculated to enable the child to receive educational benefits." *Beasley*, 6 Va. App. at 212, 367 S.E.2d at 741. *Accord Rowley*, 458 U.S. at 206-07. But the provision that the circuit court base its decision on the preponderance of the evidence is not "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206.

Due weight must be given by the trial court to the administrative proceedings. *Id.*

■ Looking next to the decisional standard to be applied by the Court of Appeals, we conclude that review of a circuit court's decision by an appellate court in a case like this should be no different than in any other civil appeal. When a case is decided by a trial court sitting without a jury, the judgment below "shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680; *Martin*, 3 Va. App. at 198-99, 348 S.E.2d at 858. The appellate court is not permitted to reweigh the evidence or to substitute its factual judgment for that of the circuit court.

■ Our examination of this record demonstrates that the Court of Appeals redetermined the facts in reversing the circuit court, and this was error. Indeed, the Court of Appeals said that "our disagreement lies with the conclusion the circuit court reached based on the whole record before it." *Beasley*, 6 Va. App. at 212, 367 S.E.2d at 741.

As we scrutinize the trial court's decision and demonstrate that its judgment was not plainly wrong or without evidence to support it, we shall assume, without deciding, that the trial court properly ruled the burden of proof in inquiries concerning free appropriate public education lies with the school board. *Contra Bales* v. *Clarke*, 523 F. Supp. 1366 (E.D. Va. 1981) (burden of proof imposed on child's parents).

■ As the trial judge noted, the sole substantive issue to be decided was whether the IEP devised in 1984 for this handicapped child and offered by Campbell County for the 1984-85 school year was "designed and calculated to offer and provide educational benefits to the handicapped child." Responding to that question, the trial court said that the evidence led "to the inescapable conclusion that Campbell County has complied with the dictates of the statutes and holding[s] of the cases and that the extant IEP was reasonably calculated and designed to provide the handicapped child with educational benefits."

A detailed recitation of the facts, many of which were conflicting, is unnecessary at this stage of the proceedings. We will summarize the evidence briefly, viewing it in the light most favorable to the school board, the prevailing party in the trial court.

Darren was born in 1969. Commencing in May 1978, regular child study committee meetings were held concerning him because

of his severe reading difficulty. Each year thereafter, committee meetings were held to compile annual IEPs appropriate for the child. The 1984 IEP committee was composed of a qualified special education instructor, a supervisor of the county special education program, the principal of Brookville Middle School which the child attended, the child's mother, and the child's attorney. All contributed to the development of the IEP for 1984-85, the IEP that the parents claim was inappropriate.

At least six experts in the field of special education testified on behalf of the school board. Each witness was of opinion that the program offered the child was appropriate to his needs, that he had received benefit from the program, and would continue to benefit in the future if he were enrolled in the program. Indeed, during the due process hearing it was stipulated on behalf of the child and his parents "that the long term goals and short term goals that are in the IEP are adequate to address his current educational level and that program that's called for educationally is as well suited to Darren's needs as can be developed."

Moreover, school board witnesses testified that the child "would progress at a smooth rate without gaps in the reading" in the proposed program; that the child could make "progress and gains" in the county schools; that his needs could be met in the county school system "in an appropriate fashion"; and that the County program was "the most appropriate placement for him," residential placement not being necessary for the child to make educational progress.

Furthermore, the evidence that the child had made progress and received benefits from his public education in the county included testimony that he had shown "consistent improvement" in reading; that he had made "consistent progress that is comparable to other self-contained middle school youngsters"; and that reading comprehension was an area of strength for the child while in the seventh grade.

Additionally, there was evidence from which the trial court properly could have concluded that the child's alleged lack of sufficient progress in reading was due to factors not related to a deficiency in the county educational program. Testimony showed that the child was late 90 percent of the time for his reading class, that he often appeared to lack motivation, and that he had difficulty at home responding to parental authority.

In sum, there was abundant evidence to support the trial court's observation: "I cannot imagine Campbell County being required to do more for a handicapped child such as Darren." At the very least, we cannot say that the circuit court's decision was plainly wrong or without evidence to support it, and the Court of Appeals erred in holding to the contrary.

For these reasons, the judgment of the Court of Appeals will be reversed and final judgment will be entered here in favor of the school board, adjudicating that it has offered the child a free appropriate public education as required by law.

*Reversed and final judgment.*