COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, O'Brien and Russell
Argued at Alexandria, Virginia


J.V., A MINOR, BY HER MOTHER AND NEXT BEST FRIEND,
  ANETTE H. VELDHUYZEN

                                                        OPINION BY
v.        Record No. 0729-16-4                  JUDGE WILLIAM G. PETTY
                                                      NOVEMBER 15, 2016
STAFFORD COUNTY SCHOOL BOARD


                    FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                              Victoria A.B. Willis, Judge

            Anette H. Veldhuyzen, *pro se*, for appellant.

            Pakapon Phinyowattanachip (Patrick T. Andriano; Reed Smith, LLP,
            on brief), for appellee.


        J.V., by her mother and next friend, argues that the circuit court erred when it granted a

plea in bar by Stafford County School Board ("the School Board") on the basis that the parent's

lack of consent to the eligibility determination precluded J.V. from qualifying as a "child with a

disability" within the meaning of the Individuals with Disabilities Education Act.[1]  Because we

hold the Act does not require a parent to consent to the eligibility determination in order for the

_____

[1] The School Board argues that J.V.'s appeal should be dismissed because J.V. failed to comply with the rules of court in presenting her four assignments of error. We address today J.V.'s fourth assignment of error, regarding the circuit court's granting of the School Board's plea in bar; because we find resolution of this error dispositive, we do not address the other assignments of error. We find J.V. adequately preserved the issue presented in her fourth assignment of error. Further, because the fourth assignment of error involves a narrow issue of law that we review *de novo*, we conclude that any deficiencies in the brief and appendix are not significant. See Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008) ("The Court of Appeals should, however, consider whether any failure to strictly adhere to the requirements of Rule 5A:20(e) is insignificant, thus allowing the court to address the merits of a question presented."). We note that our conclusion is in contrast to a separate but related case issued this day. See J.V. v. Stafford Cty. Sch. Bd., No. 0679-15-4, 2016 Va. App. LEXIS ____ (Va. Ct. App. Nov. 15, 2016) (finding deficiencies in the brief and appendix to be significant, deeming the arguments waived, and affirming the circuit court).

child to be entitled to a free and appropriate public education, we reverse the circuit court's decision and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT AND VIRGINIA'S REGULATORY FRAMEWORK

The Individuals with Disabilities Education Act seeks "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Further, the Act aims "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(B). The Act requires that a free and appropriate public education "be 'tailored to the unique needs of the [disabled] child by means of an "individualized educational program."'" D.B. v. Bedford Cty. Sch. Bd., 708 F. Supp. 2d 564, 568 (W.D. Va. 2010) (quoting Hendrick Hudson Dist. Bd. of Ed. v. Rowley, 458 U.S. 176, 181-82 (1982)). The Act "establishes certain procedural safeguards to ensure the provision of FAPE [free and appropriate public education] by a state educational agency or [local educational agency].[2] One such safeguard is the opportunity for an impartial due process hearing." Id.; Sch. Bd. v. Rose, 133 F. Supp. 3d 803, 818 (E.D. Va. 2015) ("If parents believe that an IEP [individualized education program] is not appropriate, they may seek an administrative 'impartial due process hearing.'" (quoting Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 53 (2005))).

The Act authorizes federal funds to assist state and local agencies in educating children with disabilities, but conditions receipt of those funds upon a state's compliance with the

---

[2] The briefs, evidence, case law, and the regulations related to this case are replete with acronyms, including IDEA (Individuals with Disabilities Education Act), FAPE (free appropriate public education), PWN (prior written notice), LEA (local education agency), and IEP (individualized education program). For clarity, we will use the full terms in this opinion.

- 2 -

requirements of the Act.  Loudoun Cty. Sch. Bd. v. Commonwealth Bd. of Educ., 45 Va. App. 466, 469, 612 S.E.2d 210, 212 (2005) ("[The] General Assembly has enacted statutes to ensure compliance with the [Act's] requirements."); see Code §§ 22.1-213 to 22.1-221; see also Code § 22.1-214 (requiring the Virginia Board of Education to prepare and supervise a program of special education by each school division that will comply with the Act's requirements).  The Virginia Board of Education (the "agency") developed a comprehensive and detailed regulatory program to ensure that children with disabilities within the Commonwealth have available to them a free and appropriate public education and to ensure that local school divisions comply with the Act.  See generally 8 VAC 20-81.  To understand the issue before us, a brief overview of some of these regulations is helpful.

Determination of eligibility for special education services begins with an initial evaluation of the child.  The local school must "[s]ecure informed consent from the parent(s) for the evaluation."  8 VAC 20-81-60(B)(1)(e); see also 8 VAC 20-81-60(B)(2)(c) ("The local school division shall make reasonable efforts to obtain parental consent for an initial evaluation to determine whether the child is a child with a disability.").  "Upon completion of the administration of assessments and other evaluation materials . . . a group of qualified professionals and the parent(s) of the child shall determine whether the child is, or continues to be, a child with a disability and the educational needs of the child."  8 VAC 20-81-80(C).  If the eligibility group determines that the child has a disability that requires special education, the school must develop an individualized education program calculated to provide the child with a free and appropriate public education.  Id.

The eligibility determination is made on an individual basis by a group including, among others, the special education administrator, the parent(s), a special education teacher, and at least one person qualified to conduct individual diagnostic tests.  8 VAC 20-81-80(C)(2)(b).  The

eligibility group must develop "a written summary that consists of the basis for making its determination as to the eligibility of the child for special education and related services." 8 VAC 20-81-80(D)(9). Although the regulations urge the eligibility group to "work toward consensus[,] [i]f the group does not reach consensus and the decision does not reflect a particular member's conclusion, then the group member shall submit a written statement presenting that member's conclusions." 8 VAC 20-81-80(D)(7). The written summary, including the written statements from any member whose conclusion differs, must "be maintained in the child's scholastic record." 8 VAC 20-81-80(D)(9). Once the eligibility group determines that the child is eligible for special education and the written summary is completed, the "written summary shall be forwarded to the IEP [individualized education program] team, including the parent." 8 VAC 20-81-80(D)(10).

The individualized education program is the "primary vehicle for delivery of a FAPE [free and appropriate public education] to students with disabilities." G v. Fort Bragg Dependent Schs., 343 F.3d 295, 298 (4th Cir. 2003). Extensive regulations cover the development and implementation of the individualized education program. Of most relevance to the case before us are the requirements that the parent(s) be part of the individualized education program team (8 VAC 20-81-110), that the parent consent to the initial provision of services (8 VAC 20-81-170(E)(4)), and that the parent may initiate a due process hearing before an independent hearing officer if the parent believes the individualized education program is inadequate to provide the child with a free and appropriate public education (8 VAC 20-81-210).

While placing upon the School Board the responsibility of providing a free and appropriate public education for a child with disabilities, the Act also strongly encourages parental participation in the decision-making process related to a child's education. See Rose, 133 F. Supp. 3d at 818 ("[T]he IDEA [Individuals with Disabilities Education Act] provides a

- 4 -

range of procedural safeguards to ensure parental participation in the process." (quoting Fitzgerald v. Fairfax Cty. Sch. Bd., 556 F. Supp. 2d 543, 551 (E.D. Va. 2008))). To that end, in addition to parental participation as a member of the eligibility determination group and the individualized education program team, the regulations require the school to "make reasonable efforts to obtain informed parental consent for an initial evaluation and the initial provision of special education and related services." 8 VAC 20-81-60; 8 VAC 20-81-170(E)(7); see also 8 VAC 20-81-170(E)(6) ("Consent for initial evaluation may not be construed as consent for initial provision of special education and related services.").

All the Virginia regulations discussed so far mirror the federal regulations promulgated to implement the Act. See generally 34 C.F.R. § 300. The federal regulations additionally allow a State to "require parental consent for other services and activities under this part [Assistance to States for the Education of Children with Disabilities] if it ensures that each public agency in the State establishes and implements effective procedures to ensure that a parent's refusal to consent does not result in a failure to provide the child with FAPE [free appropriate public education]." 34 C.F.R. § 300.300(d)(4). Virginia has added to its regulations several provisions requiring parental consent that are not found in the federal regulatory framework. The Virginia regulation pertinent to this case requires parental consent before "an initial eligibility determination or any change in categorical identification." 8 VAC 20-81-80(D)(8); 8 VAC 20-81-170(E)(1)(b).[3]

### B. DETERMINATION THAT J.V. IS A CHILD WITH A DISABILITY

J.V. entered kindergarten in Stafford County in fall of 2013. J.V.'s parent contacted the school to request that J.V. be evaluated for special education. See 8 VAC 20-81-60(A) ("All children . . . who are suspected of having a disability, shall be referred to the special education

---

[3] Other added consent provisions include parental consent before any revision to the child's individual education program, any termination of special education and related services, and the provision for services for children who transfer from another state. 8 VAC 20-81-170(E)(1).

administrator or designee, who shall initiate the process of determining eligibility for special education and related services. . . . Referrals may be made by . . . a parent . . . ."). J.V.'s parent participated as a member of the eligibility determination group, pursuant to 8 VAC 20-81-80(C)(2)(b). The group concluded on October 9, 2013, that J.V. was a child with a disability, with the primary disability being intellectual. See 8 VAC 20-81-80(D)(9) ("The eligibility group shall have a written summary that consists of the basis for making its determination as to the eligibility of the child for special education and related services."); see also Code § 22.1-213 (listing types of disability). The group did not reach consensus, as urged by 8 VAC 20-81-80(D)(7), because the parent disagreed that the intellectual disability was J.V.'s *primary* disability. The school asked for the parent's consent on an Eligibility Committee Summary form, which contained a box stating:

> PARENT/ ADULT STUDENT CONSENT:
> ☐ I AGREE with the eligibility team's determination.
> ☐ I DO NOT AGREE with the eligibility team's
>     determination. (Attach dissenting opinion).
>
> _____  _____
> PARENT/ADULT STUDENT SIGNATURE       DATE

The parent marked the top box but crossed out the words "agree with" and wrote "acknowledge."

On October 18, 2013, the School Board sent to J.V.'s parent a notice entitled "Prior Written Notice of Proposed/Refused Action."[4] It stated J.V. "met criteria as a student with an intellectual disability." Under "other factors, if any, relevant to the decision," the notice stated:

---

[4] The Individuals with Disabilities Education Improvement Act of 2004 requires any state or local agency receiving federal funds under the Act to provide "[w]ritten prior notice to the parents of the child . . . , whenever the local educational agency—(A) proposes to initiate or change; or (B) refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." Regulation 8 VAC 20-81-170(C) implements this requirement in Virginia. The October 18, 2013 document stated that it was being sent pursuant to the Individuals with Disabilities Education Improvement Act of 2004 and referred to the recipient as a parent of a child with a disability.

- 6 -

> Although the [parent] replaced the wording on the consent to
> eligibility from "agree with" to "acknowledge," the eligibility team
> interpreted [parent's] signature as consent to eligibility. The team
> is moving forward with the understanding that [J.V.] is eligible for
> special education services. Additionally, [parent] was informed
> that her signature did not indicate agreement with placement
> option. The IEP [individualized education program] team will
> convene to consider special education services and placement
> continuum options.

The individualized education program team developed a program for J.V., which represented the initial provision of services. The proposed individualized education program was presented to J.V.'s parent on October 25, 2013.

## C.  PARENT'S APPEAL OF THE INDIVIDUALIZED EDUCATION PROGRAM

Pursuant to 8 VAC 20-81-210, the parent requested a special education due process hearing before the Virginia Department of Education (the "agency") challenging the sufficiency of the individualized education program.[5]  Jane E. Schroeder was appointed as the independent hearing officer. The issue before Ms. Schroeder was whether the School Board's October 25, 2013 proposed individualized education program provided J.V. with a free and appropriate public education. On the night before the scheduled hearing, after close of business, the School Board emailed a motion to dismiss to Ms. Schroeder. Late that evening, the parent also responded to the motion to dismiss. At the scheduled hearing the next morning, Ms. Schroeder declined to decide the merits of whether the October 25, 2013 proposed individualized education program provided J.V. with a free and appropriate public education. Instead, she granted the School Board's motion to dismiss. In her written order, Ms. Schroeder stated that "before the parent can challenge the proposed IEP [individualized education program], the parent has to pass the eligibility threshold." Ms. Schroeder cited regulation 8 VAC 20-81-80(D)(8) for the

---

[5] The parent initially requested a due process hearing on March 13, 2014, but the case was dismissed without prejudice on procedural grounds. J.V.'s parent refiled the due process hearing request on July 28, 2014.

requirement that "the local educational agency *shall* obtain written parental consent for the initial eligibility determination" (emphasis in Ms. Schroeder's order). Ms. Schroeder found that substituting the word "acknowledge" for the words "agree with" on the eligibility determination summary did not constitute consent. J.V. was therefore not entitled to challenge the initial individualized education program until the parent consented to or challenged in a due process hearing the initial eligibility determination.

J.V. filed a challenge to the agency's decision in the circuit court. The School Board filed a plea in bar, arguing that the court "lack[ed] jurisdiction to hear the merits of this case until such time that the Parent grants consent to the initial eligibility determination or resolves it through a due process hearing." Based on the "School Board's Memorandum in Support of Plea in Bar, Plaintiff's Motion of Summary Judgment, and the School Board's Opposition to Plaintiff's Motion of Summary Judgment, as well as the arguments presented during the [circuit court] hearing,"[6] the court found that J.V.'s parent did not provide written consent to the

---

[6] The parties agree that the administrative record was not before the circuit court when it rendered decision on the motion for summary judgment and the plea in bar. J.V. petitioned this Court for a writ of certiorari asking this Court to bring before it the administrative record from the circuit court. See Turner v. Commonwealth, 56 Va. App. 391, 424, 694 S.E.2d 251, 268 (2010) ("The Court of Appeals may inspect the record of any trial or appellate court action, and the Court may, in any case, award a writ of certiorari to the clerk of the respective court below, and have brought before the Court the whole record or any part of any record." (quoting Code § 19.2-327.11(D))). A local educational agency is required to "[f]orward the record of the due process proceeding to the appropriate court for any case that is appealed[.]" 8 VAC 20-81-210(N)(15). Further, when a party challenges a decision by the agency related to the Act, "the [circuit] court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." Code § 22.1-214(D). We conclude that J.V.'s petition for a writ of certiorari must be denied because the respective court below, in this case the circuit court, does not have that part of the record as a result of the School Board's failure to comply with regulation 8 VAC 20-81-210(N)(15). However, because the proceeding in the circuit court was a *de novo* civil action and the issue before this Court is an issue of law we find that we can resolve the issue based on the record before us. On remand, the trial court should ensure that the local educational agency has complied with the requirements of Code § 22.1-214 and regulation 8 VAC 20-81-210(N).

eligibility determination and therefore J.V. was "not a 'child with a disability' within the meaning of the Individuals with Disabilities Education Act. The question of whether the October 25, 2013 Individualized Education Program provides [J.V.] with a free appropriate public education, therefore, [wa]s not properly before the [c]ourt." Because of its ruling, the circuit court dismissed the action with prejudice. J.V. argues that the circuit court erred in granting the plea in bar. We agree.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"We begin our analysis by first calibrating the scope of our judicial review."[7] Moore v. Brown, 63 Va. App. 375, 380, 758 S.E.2d 68, 70-71 (2014). We note first that Code § 22.1-214(D) permits a party challenging the decision of the Virginia Board of Education concerning a child's individualized education program to bring in the circuit court a *civil action* rather than an administrative appeal. Consequently, the "[r]eview of an administrative decision by officers appointed under authority of the Board of Education concerning a special education program for a handicapped child is not subject to the Administrative Process Act (APA), but to the provisions of [Code §] 22.1-214(D)." School Bd. of Campbell County v. Beasley, 238 Va. 44, 50, 380 S.E.2d 884, 888 (1989). In turn, this Court applies the same standard of review in civil actions brought under Code § 22.1-214(D) as we apply to other civil actions. Id. at 51, 380

---

[7] This Court has jurisdiction to hear an appeal from "any final decision of a circuit court on appeal from (i) a decision of an administrative agency[.]" Code § 17.1-405. Where a party's "right to file the civil action" is "dependent upon invoking the administrative review procedures" of a code section, appeal from a circuit court judgment is "within the jurisdiction of the Court of Appeals" pursuant to Code § 17.1-405. XL Specialty Ins. Co. v. DOT, 269 Va. 362, 367, 611 S.E.2d 356, 359 (2005); see also Commonwealth v. E.W. Yeatts, Inc., 233 Va. 17, 24, 353 S.E.2d 717, 721 (1987) (noting that although "'appeal' and 'civil action' ordinarily are not considered synonymous terms," in the context of civil actions based on an administrative agency's decision, equating the two terms is a "common sense interpretation of statutory language").

S.E.2d at 888 ("Review of a circuit court's decision by an appellate court in a case like this should be no different than in any other civil appeal.").

Although "[t]he standards of review for a defensive plea in bar and a demurrer are substantially similar," Sullivan v. Jones, 42 Va. App. 794, 802, 595 S.E.2d 36, 40 (2004), "[a] plea in bar presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. The moving party has the burden of proof on that issue," Hilton v. Martin, 275 Va. 176, 179-80, 654 S.E.2d 572, 574 (2008). "Well-settled principles govern our review of the trial court's decision. We will not disturb the trial court's findings of fact unless they are plainly wrong or without evidence to support them, but we will review *de novo* its conclusions of law. D.R. Horton, Inc. v. Board of Supervisors, 285 Va. 467, 472, 737 S.E.2d 886, 888 (2013).

Furthermore, the circuit court's interpretation of Code § 22.1-214 and the administrative regulations adopted to implement that statute represent an issue of law reviewed by this Court *de novo*. Appalachian Power Co. v. State Corp. Comm'n, 284 Va. 695, 703, 733 S.E.2d 250, 254 (2012); Scott v. Commonwealth, 58 Va. App. 35, 48, 707 S.E.2d 17, 24 (2011) ("[A]n issue of statutory construction is a pure question of law which we review *de novo*."). "The proper course [in this case as in all cases of statutory construction] is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature." Johnson v. Commonwealth, 53 Va. App. 608, 611, 674 S.E.2d 541, 542 (2009) (alteration in original) (quoting Colbert v. Commonwealth, 47 Va. App. 390, 394, 624 S.E.2d 108, 110 (2006)). In determining whether a regulation is inconsistent with its enabling legislation, we must "take into account the text as well as the context of the underlying statute, 'viewing it as a "symmetrical and coherent regulatory scheme."'" Kavanaugh v. Va. Birth-Related Neurological Injury Comp. Prog., 60 Va. App. 440, 447, 728 S.E.2d 527, 531 (2012) (quoting Ragsdale v. Wolverine World

Wide, Inc., 535 U.S. 81, 86 (2002)).  Moreover, when multiple statutes and regulations concern the same subject, we construe them together "to avoid conflict between them and to permit each of them to have full operation according to their legislative purpose."  Eastlack v. Commonwealth, 282 Va. 120, 125-26, 710 S.E.2d 723, 726 (2011).

B.  PARENTAL CONSENT WITHIN THE CONTEXT OF THE REGULATORY SCHEME

The School Board, in its brief before this Court, framed the issue as "a simple one: whether [J.V.] is a 'child with a disability' within the meaning of the [Individuals with Disabilities Education Act], as to avail her the right to challenge the proposed October 25, 2013 [individualized education program], when the Parent never granted consent to the initial eligibility decision."  The School Board argues that a parent's failure to "consent" to the initial eligibility decision negates the child's status as a "child with a disability" under the Act.  For the following reasons, we disagree.

It is apparent that a key objective of the enabling statute for creation of Virginia's special education program, see Code § 22.1-214, is compliance with the federal requirements of the Individuals with Disabilities Education Act so as to protect the Commonwealth's eligibility for federal funds under the Act.  See Loudoun Cty., 45 Va. App. at 469, 612 S.E.2d at 212 ("The General Assembly has enacted statutes to ensure compliance with the [Act's] requirements.").  Thus, in determining whether the parental consent requirement for the eligibility determination is consistent with the enabling legislation, we must construe Virginia's Administrative Code in a manner "which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects of the legislature."  Johnson, 53 Va. App. at 611, 674 S.E.2d at 542 (quoting Colbert, 47 Va. App. at 394, 624 S.E.2d at 110).  We therefore would not construe the regulations in a way that would negate the Commonwealth's eligibility for federal funds.  Rather, we construe the complete regulatory scheme together "to avoid conflict between [the various

- 11 -

regulations and statutes] and to permit each of them to have full operation according to their legislative purpose." Eastlack, 282 Va. at 125-26, 710 S.E.2d at 726.

The federal regulations require three types of consent from the parent of a child: consent "before conducting [an initial] evaluation," 34 CFR § 300.300(a)(1)(i); consent "before the initial provision of special education and related services to the child," 34 CFR § 300.300(b)(1); and consent "prior to conducting any reevaluation of a child with a disability," 34 CFR § 300.300(c)(1)(i). If the parent fails to consent to any of these three actions, the School Board is not required to provide the child with a free and appropriate public education. The Virginia regulations mirror these federal provisions; the Virginia regulation for parental consent before the initial evaluation and before any reevaluation is 8 VAC 20-81-170(E)(1)(a), and the Virginia regulation requiring parental consent before the initial provision of services is 8 VAC 20-81-170(E)(1)(c). However, nestled between these two subsections is Virginia's requirement for parental consent before "[a]n initial eligibility determination or any change in categorical identification." 8 VAC 20-81-170(E)(1)(b). This Virginia regulation has no counterpart in the federal regulations.

The fact that the requirement of 8 VAC 20-81-170(E)(1)(b) is unique to Virginia does not mean it is not authorized by federal regulations. Federal regulation 34 CFR § 300.300(d)(2) provides,

> In addition to the parental consent requirements described in paragraphs [earlier in that] section, a State may require a parental consent for other services and activities under this part *if it ensures that each public agency in the State establishes and implements effective procedures to ensure that a parent's refusal to consent does not result in a failure to provide the child with FAPE [free and appropriate public education].*

(Emphasis added).

- 12 -

The agency's additional requirement that a parent provide consent for the initial eligibility determination advances the purpose of the regulatory scheme, which is "to ensure that all children with disabilities have available to them a free appropriate public education, including specially designed instruction to meet the unique needs of such children." Code § 22.1-214(A). Consequently, the additional parental consent in the Virginia regulations is permissible within the constraints of the federal regulatory scheme as long as a parent's refusal of consent does not create a barrier to a free and appropriate public education for the child. Simply put, a child's entitlement to special education and related services cannot be contingent on parental consent to the eligibility determination.

However, this was precisely what the School Board argued, what the agency decided, and the basis on which the circuit court granted the plea in bar. The agency determined that J.V. was not permitted a due process hearing on whether the October 25, 2013 individualized education program provided her with a free and appropriate public education until J.V.'s parent consented to the eligibility determination. The agency's interpretation conflicts with the federal limitation on additional parental consents and would frustrate the legislature's goal of remaining eligible for federal funds to assist in the education of disabled students. The rules of statutory and regulatory "interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd." Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984). "An absurd result describes situations in which the law would be internally inconsistent or otherwise incapable of operation." Butler v. Fairfax Cnty. Sch. Bd., 291 Va. 32, 37, 780 S.E.2d 277, 280 (2015) (quoting Covel v. Town of Vienna, 280 Va. 151, 158, 694 S.E.2d 609, 614 (2010)). The agency's interpretation, which was adopted by the circuit court, would render an absurd result because it could jeopardize the Commonwealth's

- 13 -

compliance with the Act, thereby defeating a key purpose for which the regulations were promulgated.

We additionally observe that, in the context of initial evaluation and initial provision of services, both the federal and state regulations provide expressly for a bar to provision of free and appropriate public education based on a parent's refusal of consent in two situations only. If the parent refuses or withholds consent for the initial evaluation, the local school may, but is not required to, use mediation or due process hearing procedures to pursue the evaluation. 34 C.F.R. § 300.300(a)(3)(i); 8 VAC 20-81-170(4)(a); 8 VAC 20-80-170(5)(a). If the parent refuses or withholds consent for the initial provision of services, the local school is prohibited from pursuing consent by means of mediation or due process hearing procedures. 34 C.F.R. § 300.300(b)(3); 8 VAC 20-81-170(4)(b); 8 VAC 20-80-170(5)(b). If a parent refuses consent in either of these two situations, the school board is released from its obligation to provide free and appropriate public education to the parent's disabled child. 34 C.F.R. § 300.300(a)(3)(ii); 34 C.F.R. § 300.300(b)(3)(ii); 8 VAC 20-81-170(4)(a)-(b). The agency's interpretation of the regulation would add a third situation in which a parent's refusal of consent would release the school board from its obligation to provide a child with a disability with free and appropriate public education. Neither the federal nor the Virginia regulations provide for this result. Nevertheless, J.V. has been denied a due process hearing on the merits of whether the individualized education program proposed by the school provides J.V. with a free and appropriate public education because of the agency's requirement that J.V.'s parent consent by marking the "I agree with" box on the Eligibility Committee Summary form.

## C. AGREEMENT IS NOT REQUIRED FOR CONSENT

Furthermore, we note that the School Board's initial position, that J.V.'s parent *did* consent to the eligibility determination even though she did not agree with the conclusions of the

group, fits within the regulatory scheme viewed as a "symmetrical and coherent" whole. See Kavanaugh, 60 Va. App. at 447, 728 S.E.2d at 531. The affidavit of Betty Reeves, an employee of the School Board, was submitted to the circuit court in support of the School Board's plea in bar. Ms. Reeves was present at the eligibility committee meeting and stated in her affidavit that "the committee found that J.V. qualified as a student with a disability under the classification of intellectual disability." To clarify any ambiguity, Ms. Reeves, in her capacity as Supervisor of Student Services for the School Board, sent a "prior written notice" to the parent on October 18, 2013. The notice stated that "the eligibility team interpreted [parent's] signature as consent to eligibility." The notice additionally clarified that the parent "was informed that her signature did not indicate agreement with placement options." Thus, as of October 18, 2013, all parties operated under the premise that the signature of J.V.'s parent constituted consent to, but not agreement with, the eligibility finding. This interpretation was consistent with the regulatory scheme.

Under Virginia's regulations, the "meaning of the term 'consent' is not the same as the meaning of the term 'agree' or 'agreement.' 'Agree' or 'agreement' refers to an understanding between the parent and the local educational agency about a particular matter and as required in this chapter." 8 VAC 20-81-10. The regulations express clearly that "consent" cannot be equated with "agreement" because the two meanings are "not the same." Id. The School Board's initial position did not equate the two terms.

Nevertheless, months later and on the eve of the due process hearing regarding the adequacy of the proposed individualized education program, the School Board argued to the agency that the parent's signature did *not* constitute consent, and the child therefore did not qualify as child with a disability, because the parent crossed out "agree with" and substituted "acknowledge." The School Board's new position required J.V.'s parent to *agree* with the

- 15 -

group's conclusions in order to consent to the initial eligibility determination pursuant to 8 VAC 20-81-80(D)(8). This School Board position incorrectly conflated the terms "consent" and "agree." The agency therefore erred in adopting the School Board's later position.

### D. THE REGULATORY SCHEME PRESERVES DISAGREEMENT BY ELIGIBILITY GROUP MEMBERS

Finally, the agency's conclusion, that J.V.'s parent had to agree with the eligibility group's determination in order to give consent, conflicts with the regulatory framework for determining eligibility and educational need, which is found in 8 VAC 20-81-80. Subsection 80(C)(2) includes the parent(s) as an eligibility group member. Subsection 80(D)(7) urges the eligibility group to work toward consensus. However, preservation and documentation of disagreement by individual group members is so important to the integrity of the process that the regulations require that "[t]he written summary shall include any written statement from a member whose conclusion differs from the other members' determination." 8 VAC 20-81-80(D)(9). Subsections 80(D)(7) and 80(D)(9) both require that a member who does not agree with the eligibility group's conclusions make his or her disagreement known. The agency's interpretation that a parent must "agree" in order to "consent" to the eligibility finding would yield the "internally inconsistent" result, Butler, 291 Va. at 37, 780 S.E.2d at 280, that the only group member not permitted to disagree with the eligibility committee's conclusion is the parent. Under the agency's interpretation and the School Board's consent form that is before us, a child with a disability can be denied a free and appropriate public education if the child's parent disagrees with a finding by the eligibility group. We reject this interpretation because it would strip parents of critical rights under the regulations and discourage active parental participation. See Jones, 227 Va. at 181, 314 S.E.2d at 64 (cautioning "against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd").

- 16 -

A key goal of the Individuals with Disabilities Education Act is to protect a parent's "right to participate in [his or her] child's educational evaluation." G., 343 F.3d at 299.

The Eligibility Committee Summary form used by the School Board has two options under the phrase "Parent/Adult Student Consent." The person may mark "I agree with" or "I do not agree with" the eligibility team's eligibility determination. Notably, a person choosing "I do not agree with" is directed to "attach dissenting opinion." We conclude that, as long as the School Board chooses to use the wording as it appears on the form before us, a parent may give "consent" to the eligibility determination by marking either box. Our interpretation, that a person may consent by choosing either the "I agree with" or the "I do not agree with" option, permits each of the regulation's subsections to have full operation according to their legislative purpose. See Eastlack, 282 Va. at 125, 710 S.E.2d at 726. Our interpretation "adopt[s] that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature." Johnson, 53 Va. App. at 611, 674 S.E.2d at 542. Specifically, our interpretation avoids conflict between 8 VAC 20-81-80(D)(7), 8 VAC 20-81-80(D)(8), and 8 VAC 20-81-80(D)(9) and encourages parents to document any disagreement with the eligibility group's conclusions, as any other member of the group may do.

Taking into account the text of the regulations, as well as the context and purpose of the underlying statute, we hold that J.V.'s parent did not have to agree with the eligibility group's conclusions in order to provide consent pursuant to 8 VAC 20-81-80(D)(8). The circuit court erred in finding that because J.V.'s parent did not provide written consent to the eligibility decision that J.V. is not a child with a disability within the meaning of the Individuals with Disabilities Education Act. Consequently, the circuit court erred in concluding that the question of whether the October 25, 2013 individualized education program provided J.V. with free and

appropriate public education was not properly before the court. Thus, the circuit court erred in

granting the School Board's plea in bar.[8]

### III. ON REMAND

#### A. THE ACTION MUST BE TREATED AS A CIVIL ACTION RATHER THAN AN APPEAL

The agency declined to address on the merits whether the October 25, 2013

individualized education program was reasonably calculated to enable J.V. to receive educational

benefits. Instead, the agency erroneously dismissed the case on the basis that the parent had not

consented to the initial eligibility determination. Virginia's Code provides,

> Any party aggrieved by the findings and decision made pursuant to
> [the procedures established by the Virginia Board of Education to
> implement Virginia's special education program for children with
> disabilities] may, within 180 days of such findings and decision,
> bring a civil action in the circuit court for the jurisdiction in which
> the school division is located. In any such action the court shall
> receive the records of the administrative proceedings, shall hear
> additional evidence at the request of a party, and basing its
> decision on the preponderance of the evidence, shall grant such
> relief as the court determines appropriate.

---

[8] The School Board suggests that this controversy is moot because J.V.'s parent has now started anew the process of gaining special education for J.V. "A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Ingram v. Commonwealth, 62 Va. App. 14, 21, 741 S.E.2d 62, 66 (2013) (quoting Chafin v. Chafin, 133 S. Ct. 1017, 1023 (2013)). J.V. was in kindergarten when the school offered the October 25, 2013 individualized education program that the parent challenged. Three years have passed. The special education and related services offered in 2013 undoubtedly would no longer be appropriate for J.V., who is now a third-grade student. See 8 VAC 20-81-110 (requiring review of a child's individualized education program at least annually to determine whether program goals are being met). Nevertheless, the parent and the School Board agree that although the child is eligible for special education and related services, she is receiving none because the parties cannot agree on what special education and related services are appropriate. Thus, the issue of whether the School Board has met its obligation to provide J.V. with a free and appropriate public education is still "live" and J.V. and her parent still have legally cognizable interests in the outcome. Furthermore, "if the underlying dispute is 'capable of repetition, yet evading review,'" it is not moot. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 55, 563 (1980). Additionally, the circuit court's determination may have collateral consequences. See e.g. Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 232-33 (2009) (holding that a parent may be entitled to reimbursement for special education expenses when a school board fails to provide his or her child with free and appropriate public education). Therefore, we conclude that the issue is not moot.

- 18 -

Code § 22.1-214(D). We note that pursuant to Code § 22.1-214(D) the action filed by J.V. in the circuit court challenging the agency's decision was a new civil action and not an appeal of the administrative decision. "Thus, a [circuit] court does not simply affirm, reverse, or vacate the decision of the state administrative agency. Instead, it offers its own independent *de novo* review and conclusion." Kirkpatrick v. Lennoir Cty. Bd. of Educ., 216 F.3d 380, 384 (4th Cir. 2000). On remand, the circuit court must determine *de novo* whether, in light of today's opinion, J.V. is a child with a disability within the context of the Individuals with Disability Education Act and, if so, whether the October 25, 2013 individualized education program was reasonably calculated to enable J.V. to receive educational benefits. See Rowley, 458 U.S. at 206-07 ("Therefore, a court's inquiry in suits brought under [the Individuals with Disabilities Education Act] is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?").

The Supreme Court of Virginia gave guidance in Newport News School Board v. Commonwealth, 279 Va. 460, 689 S.E.2d 731 (2010), regarding the unusual posture of a party's civil action challenging an agency's decision under the Individuals with Disabilities Education Act. In Newport News, the Supreme Court made clear that "an action filed pursuant to IDEA [Individuals with Disabilities Education Act] is an independent civil action, and not an administrative action." Id. at 470, 689 S.E.2d at 737. Citing with approval the analysis of the parallel federal regulations by the federal Fourth Circuit Court of Appeals in Kirkpatrick , the Supreme Court noted that the federal regulations, like Code § 22.1-214(D), provide that the court reviewing an action "shall hear additional evidence at the request of a party." Id. at 469, 689 S.E.2d at 736 (quoting 20 U.S.C. § 1415(i)(2)(B)(ii)). "[R]eviewing courts under IDEA [Individuals with Disabilities Education Act] 'are not limited to the parameters of the remedies

issued by the state administrative agency below.'" Id. (quoting Kirkpatrick, 216 F.3d at 384).

"This procedure stands in contrast to a true appellate court, which is limited by the record developed below." Id.; Kirkpatrick, 216 F.3d at 384 ("From a procedural standpoint, courts hearing a case on appeal are limited to reviewing the record that has been developed below."). "Therefore, rather than simply affirming, reversing, or vacating a decision of a state administrative agency, the reviewing court 'offers its own independent *de novo* review and conclusion.'" Id. (quoting Kirkpatrick, 216 F.3d at 384).

## B. STANDARD OF REVIEW ON REMAND

On remand, the "proper standard to be employed by the circuit court is 'to determine, based on a preponderance of the evidence, whether the substance of the proposed individualized educational program is reasonably calculated to enable the child to receive educational benefits.'" Beasley, 238 Va. at 50, 380 S.E.2d at 888 (quoting Beasley v. Sch. Bd. of Campbell Cty., 6 Va. App. 206, 212, 367 S.E.2d 738, 741 (1988)). "The trial court is not limited to determining, as under the APA, whether there is 'substantial evidence in the agency record' to support the administrative findings of fact." Id. Instead, Code § 22.1-214(D) requires circuit courts to hear additional evidence upon request, to base its decision on a *de novo* preponderance of the evidence, and to grant such relief as the court determines appropriate. See id. ("[The circuit court is] required to make an 'independent decision' based on the preponderance of the evidence." (quoting Rowley, 458 U.S. at 205)).[9]

---

[9] The circuit court normally has before it the administrative record, which would include the due process hearing. See, 8 VAC 20-81-210(N). The Supreme Court has cited with approval the Fourth Circuit's acknowledgement "that deference is given to the state administrative officer's findings of fact, [but] that deference 'is merely a recognition that state educational administrative agencies possess a level of expertise and familiarity with educational standards.'" Newport News 279 Va. at 469, 689 S.E.2d at 736 (quoting Kirkpatrick, 216 F.3d at 382). We recognize that where, as here, the agency dismissed the case without addressing the merits, the administrative record may not be as helpful as when the agency's decision is supported by

In summary, the circuit court must hear and weigh the evidence presented as it would in any other civil action. The court must determine, by a preponderance of the evidence whether J.V. is a child with a disability in the context of Code § 22.1-214 and its implementing regulations, and, if so, whether the October 25, 2013 individualized education program provided J.V. with free and appropriate public education. The court may then grant such relief as the court deems appropriate.

IV. CONCLUSION

The circuit court erred in concluding that J.V. was not a child with a disability within the context of the Individuals with Disabilities Education Act on the basis that J.V.'s parent purportedly refused to consent to the eligibility group's conclusion. The circuit court consequently erred in granting the School Board's plea in bar and failing to address on the merits the question of whether the School Board's proposed individualized education program provided J.V. with a fair and appropriate public education.

Therefore, we reverse the judgment of the circuit court and remand the case for further proceedings pursuant to Code § 22.1-214(D).

Reversed and remanded.

---

well-supported analysis. Nevertheless, the court should ensure that it has the administrative record before it pursuant to Code § 22.1-214(D) and 8 VAC 20-81-210(N).